**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Tramaine Seay,

Plaintiff, | Case No. 25-cv-12140

v.

Judith E. Levy
United States District Judge

Equifax Information Service LLC,

Mag. Judge Anthony P. Patti

Defendant.

________________________________/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT EQUIFAX INFORMATION SERVICE LLC'S MOTION TO DISMISS AMENDED COMPLAINT [9]**

Plaintiff Tramaine Seay alleges that Defendant Equifax Information Service LLC violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, when it continued to include a "dispute notation" on her credit report after being notified that she "no longer disputes" the account that is the subject of the notation. (ECF No. 8, PageID.43, ¶ 10.) Defendant moves to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (*See* ECF No. 9.) For the reasons set forth below, the Court GRANTS Defendant's motion in part and DENIES it in part.

## I. Background

Plaintiff's Equifax credit report includes a notation indicating that Plaintiff disputes a "tradeline" (i.e., account) with First Premier Bank. (ECF No. 8, PageID.43, ¶ 7.) Plaintiff alleges that she "no longer disputes" the tradeline. (*Id.* at PageID.43, ¶ 8.) In March 2025, Plaintiff sent a letter to Defendant in which she stated that she "no longer disputes" the tradeline and "wants the dispute notation removed from the tradeline." (*Id.* at PageID.43, ¶ 10.) Plaintiff separately sent a letter to First Premier Bank in which she allegedly stated that she "no longer disputes" the tradeline and "wants the dispute notation removed from the tradeline." (*Id.* at PageID.43, ¶ 11.)

Defendant allegedly sent "dispute results" to Plaintiff in May 2025. (*Id.* at PageID.43, ¶ 13.) These "dispute results" allegedly showed that Defendant "failed or refused to remove" the dispute notation. (*Id.*)

Plaintiff alleges that the "failure to remove" the dispute notation results in her credit report containing "false and misleading" information. (*Id.* at PageID.43–44, ¶ 14.) She further alleges that the continued inclusion of the notation "damages Plaintiff by preventing her from obtaining any mortgage loan or refinancing of the same." (*Id.*)

Plaintiff filed her initial Complaint on July 15, 2025. (*See* ECF No. 1.) She then filed an Amended Complaint on November 19, 2025 (ECF No. 8) after Defendant moved to dismiss her initial Complaint.[1] The Amended Complaint asserts two counts: Count I alleges that Defendant negligently violated the FCRA, while Count II alleges that Defendant willfully violated the FCRA.

Defendant moved to dismiss the Amended Complaint on December 3, 2025. (ECF No. 9.) The motion is fully briefed. (*See* ECF No. 10, 12.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a facially plausible claim requires courts to construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and decide whether there is enough factual content to allow 'the court to draw the reasonable

[1] The Court denied as moot Defendant's motion to dismiss the initial Complaint. (*See* ECF No. 13.)

inference that the defendant is liable for the misconduct alleged.'" *Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 425 (6th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Although for the purposes of [a] motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *cited in Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## III. Analysis

"This is one of many 'dispute about a dispute' cases—where a plaintiff disputes an account, then elects not to dispute the account, and then files a dispute about the fact that her credit report continues to list the account as disputed—that have been filed in this and other federal courts." *Outlaw v. Equifax Info. Servs., LLC*, No. 20-2855, 2022 WL 1286295, at *3 (N.D. Ga. Jan. 28, 2022) (collecting cases). Plaintiff alleges

that, due to Defendant not removing a dispute notation from her credit report upon her request, the report "contained information about Plaintiff that was false, misleading, and inaccurate." (ECF No. 8, PageID.44, ¶ 18; *id.* at PageID.46, ¶ 25.) Plaintiff claims that Defendant violated the FCRA willfully (Count II) or, at a minimum, negligently (Count I) in allowing the challenged dispute notation to remain on her credit report. These claims are addressed in turn below.

**A. Alleged Negligent Violations of the FCRA (Count I)**

The FCRA empowers consumers to "bring a suit to recover actual damages . . . from '[a]ny person who is negligent in failing to comply with any requirement imposed . . . with respect to any consumer' under the Act." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012) (quoting 15 U.S.C. § 1681o). In this case, Plaintiff plausibly alleges that Defendant was negligent in allegedly failing to comply with one or more requirements imposed on Defendant by the FCRA.

Plaintiff contends that Defendant negligently failed to comply with both § 1681e(b) and § 1681i of the FCRA. (ECF No. 8, PageID.45, ¶¶ 19–

20.) Section 1681e(b) requires "consumer reporting agenc[ies]"[2] to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom [a credit] report relates." 15 U.S.C. § 1681e(b). Section 1681i, in turn, sets forth the procedure that an agency must follow when a consumer "dispute[s]" the "completeness or accuracy of any item of information contained in a consumer's file." *Id.* § 1681i(a)(1)(A). Once a consumer "notifies the agency directly . . . of such a dispute," the agency "shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" within thirty days of receiving "notice of the dispute from the consumer," *id.*, provided that the dispute is not "frivolous or irrelevant," *see id.* § 1681i(a)(3). As part of the reinvestigation, the agency must provide notice of the dispute to the entity that furnished the disputed information. *See id.* § 1681i(a)(2). An agency "shall" either "promptly delete" or "modify" any "item of

[2] The statute defines a "consumer reporting agency" in relevant part as "any person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15.U.S.C. § 1681e(f).

information" that "is found to be inaccurate or incomplete" through this reinvestigation process. *Id.* § 1681i(a)(5)(A).

The Sixth Circuit treats claims under § 1681e(b) as involving the following four elements: "(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 941 (6th Cir. 2020) (quoting *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004)). The Sixth Circuit "analyze[s] § 1681i claims under a similar framework" to 1681e(b) claims. *Berry v. Experian Info. Solutions, Inc.*, 115 F.4th 528, 536 (6th Cir. 2024). As with a claim under § 1681e(b), "a showing of inaccuracy is an essential element of a § 1681i claim." *Id.*

A report contains "inaccurate" information for purposes of these provisions if it includes either (1) "patently incorrect" information or (2) "information that was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer].'" *Twumasi-Ankrah*, 954 F.3d at 942 (first alteration added;

second and third alteration in the original) (quoting *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)); *see also Berry*, 115 F.4th at 536 (citing *Twumasi-Ankrah*, 954 F.3d at 942). "In other words, a consumer can demonstrate an inaccuracy where a report was materially misleading or incomplete, even if it was technically accurate." *Berry*, 115 F.4th at 536 (citing *Twumasi-Ankrah*, 954 F.3d at 943). In *Twumusi-Ankrah*, for instance, a divided panel of the Sixth Circuit held that a plaintiff adequately alleged that his credit report contained "inaccurate" information under § 1681e(b) when he alleged that he was fired by his employer (Uber) due to his credit report making him appear to be a "more careless driver than he was." *See* 954 F.3d at 944. The report in question alleged that the plaintiff was involved in multiple accidents without specifying that all but one were the fault of other parties. *See id.*

Here, it appears that the dispute notation was accurate when it was first included in Plaintiff's credit report. (*See* ECF No. 8, PageID.43, ¶ 8 (alleging that Plaintiff "*no longer* disputes" the tradeline (emphasis added)).) The question is thus whether a once-accurate dispute notation plausibly *became* inaccurate due to Plaintiff informing Defendant and/or

First Premier Bank that she "no longer disputed" the tradeline. (*See id.* at PageID.43, ¶¶ 10–11.)

Defendant does not address this issue squarely in its briefing. Rather, it first seeks dismissal on grounds that the FCRA requires consumer reporting agencies like Defendant to note the existence of disputes in a consumer's credit report whenever a "furnisher" of information such as First Premier Bank provides notice of such a dispute. (ECF No. 9, PageID.58–59.) *See also* 15 U.S.C. § 1681s(f) ("If a consumer reporting agency is notified pursuant to section 1681s-2(a)(3) of this title that information regarding a consumer who was furnished to the agency is disputed by the consumer, *the agency shall indicate that fact in each consumer report that includes the disputed information*." (emphasis added)). But Defendant's reporting obligations under § 1681s(f) do not resolve the question of whether once-accurate dispute information can become inaccurate. Defendant has not pointed to anything in the FCRA that specifically requires Defendant to *continue* to include a dispute notation in a report even if circumstances change. Defendant acknowledges that the dispute notation at issue here is, in fact, removable, as it elsewhere argues that the notation "*can . . . be removed*

by the furnisher after being told by the consumer that she no longer disputes the First Premier Account." (ECF No. 9, PageID.61 (emphasis added); *see also* ECF No. 12, PageID.108 ("[A] dispute notation remark can only be removed if the consumer directly contacts the furnisher.").) Having acknowledged that a process exists to remove a dispute notation, Defendant cannot secure dismissal by pointing to its statutory obligation to add such a notation in the first instance.

This leads to Defendant's second argument, which is that the "only" way for Plaintiff to have the dispute notation removed is to ask First Premier Bank to remove it. (*See* ECF No. 9, PageID.60–61.) This argument appears to be based on a statutory provision that required First Premier Bank to alert Defendant to Plaintiff's dispute when providing Defendant with information regarding Plaintiff's First Premier Bank account. *See* 15 U.S.C. § 1681s-2(a)(3) ("If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed by such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."). (*See* ECF No. 9, PageID.59.) Defendant contends that, under § 1681s-2(a)(3),

furnishers like First Premier Bank "*must* retain dispute notations *unless consumers ask the furnishers*, rather than the [consumer reporting agencies], to remove them." (*Id.* at PageID.60 (first emphasis in original; second emphasis added).) But Defendant points to no provision of the FCRA that requires consumers to contact furnishers if they wish their credit report to state that an account is no longer disputed. Although Defendant's preferred method may be the most efficient route to resolving a "dispute regarding a dispute," Defendant has not identified a provision of the FCRA that specifies or implies that it is the *only* route.

In arguing that Plaintiff's only recourse was to contact First Premier Bank directly, Defendant also relies on two decisions in which federal district courts in Georgia held that consumers may not pursue FCRA claims against companies that furnish information to consumer reporting agencies unless the consumers first reach out to such "furnishers" directly and ask them to remove the challenged dispute notations. (*See* ECF No. 9, PageID.60 (citing *McGee v. Equifax Info. Servs., LLC*, No. 1:18-cv-04144-MHC-CMS, 2019 WL 2714505, at *3 (N.D. Ga. Mar. 19, 2019), *report & recommendation adopted,* 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019); *Briscoe v. Equifax Info. Servs., LLC*, No.

1:20-cv-02239-WMR-CMS, 2020 WL 10046994, at *8 (N.D. Ga. Oct. 27, 2020), *report & recommendation adopted*, 2021 WL 2376663 (N.D. Ga. Jan. 12, 2021)).) At most, *McGee* and *Briscoe* support the notion that a consumer must ask a furnisher to remove a dispute notation and cannot solely ask a consumer reporting agency to modify her credit report. *See, e.g.*, *McGee*, 2019 WL 2714505, at *3 (reasoning that a furnisher that "removed the 'account in dispute' language based solely on the word of Equifax and/or Experian . . . would have violated the FCRA"). This does not help Defendant. *Even if* the Court were to conclude that the FCRA required Plaintiff to ask First Premier Bank to remove the dispute notation, Plaintiff alleges that she did exactly that. (*See* ECF No. 8, PageID.43, ¶¶ 11–12 (alleging that Plaintiff sent a letter that was received by First Premier Bank in which she stated that "she no longer disputes" the relevant information regarding her First Premier Bank account and "wants the dispute notation removed from the tradeline").) Defendant fails to address Plaintiff's allegation that she did exactly what Defendant claims was necessary to have the dispute notation removed from her credit report.

Defendant next argues that it had no legal obligation to "reinvestigate" Plaintiff's challenge to the dispute notation under § 1681i. (*See* ECF No. 9, PageID.61–69.) It first points to the fact that § 1681i requires a "reasonable reinvestigation" only when a consumer disputes "the completeness or accuracy of *any item of information* contained in a consumer's file." (*See id.* at PageID.61–62 (quoting 15 U.S.C. § 1681i(a)(1)(A)) (emphasis added).) Defendant contends that a dispute notation does not qualify as an "item of information in a consumer's file" because it is better understood as a type of "meta-information." (*See id.* at PageID.61–65.) The Court does not find this distinction meaningful and finds insufficient statutory support under § 1681i for treating "meta-information" differently than other information. Defendant also argues that it would be "impossible" to conduct a "reasonable reinvestigation" regarding a challenged dispute notation. (*See id.* at PageID.65–69.) But Defendant fails to adequately explain why such a reinvestigation would be "impossible" such that the Court could conclude that Plaintiff fails to state a plausible claim under the FCRA as a matter of law.

Ultimately, Defendant's arguments fail to establish that the FCRA forecloses Plaintiff from pursuing a negligence claim against Defendant

under the circumstances alleged here. Although she proceeds with sparse and formulaic allegations, Plaintiff has plausibly alleged that, at some point after she informed both Defendant and First Premier Bank that she "no longer disputes" the First Premier Bank account (ECF No. 8, PageID.43, ¶¶ 8–12), Defendant's decision to continue to include the dispute notation in her credit report (*id.* at PageID.43, ¶ 13) resulted in the report being misleading and/or incomplete. *See Twumasi-Ankrah*, 954 F.3d at 944. And while Plaintiff's allegations of the resulting harm are sparse, she has plausibly alleged that the continued inclusion of the challenged dispute notation "damages Plaintiff by preventing her from obtaining any mortgage loan or refinancing of the same, as conventional lenders will not grant a mortgage based on a credit report that has any tradeline reported as disputed." (ECF No. 8, PageID.43–44, ¶ 14.) These allegations, taken together, suffice to state a claim for relief under § 1681o of the FCRA. *See Twumasi-Ankrah*, 954 F.3d at 944 (concluding that a plaintiff did "enough to survive a motion to dismiss" because his allegations "plausibly suggest that [a consumer reporting agency] reported 'misleading' information about [the plaintiff] that could have been 'expected to have an adverse effect' on him" (quoting *Dalton*, 257

F.3d at 415)); *see also id.* at 945 (concurring opinion by Judge Kethledge agreeing that "Twumasi-Ankrah has plausibly alleged these things—albeit barely"); *Berry*, 115 F.4th at 540 (concluding that a plaintiff "pleaded sufficient facts to state a claim that Experian was negligent in discharging its obligations to conduct a reasonable investigation and reinvestigation into the disputed information pursuant to §§ 1681e(b) and 1681i" but declining to decide on a motion to dismiss "whether Experian's procedures were per se reasonable or unreasonable").

In sum, Plaintiff plausibly alleges that Defendant was negligent in allegedly failing to comply with one or more requirements imposed on Defendant by the FCRA. *See* 15 U.S.C. § 1681o. Count I of the Amended Complaint will not be dismissed.

### B. Alleged Willful Violations of the FCRA (Count II)

In addition to creating a private right of action for consumers who allege negligence by consumer reporting agencies, the FCRA also permits consumers to recover actual damages, punitive damages, and costs and fees from "[a]ny person who willfully fails to comply with any requirement imposed [by the FCRA] with respect to any consumer." 15 U.S.C. § 1681n. Plaintiff cannot proceed under § 1681n because she fails

to plausibly allege that Defendant willfully failed to comply with any requirement imposed on Defendant by the FCRA.

A consumer reporting agency like Defendant can be found to have "willfully" failed to comply with the FCRA only it failed to comply with its legal obligations either "knowingly" or "recklessly." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–60 (2007). A company "willfully" violates the FCRA only when it relies on an "objectively unreasonable" reading of the statute that lacks a "foundation in the statutory text." *Id.* at 69–70. Moreover, a "company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

In this case, the FCRA appears to be silent on the specific claim raised by Plaintiff's Amended Complaint, namely: (i) whether the continued inclusion of a once-correct dispute notation in a credit report renders that report "inaccurate" if a consumer unilaterally elects to withdraw her dispute and (ii) the proper procedure for removing a dispute notation from a credit report. Neither party points to any binding

authority addressing these issues, and non-binding decisions (including decisions issued by courts in the Eastern District of Michigan) are split over whether a consumer reporting agency has any legal obligation to modify a dispute notation on a credit report after a consumer decides unilaterally to withdraw a dispute. *Compare Armstrong v. Equifax Info. Servs., LLC*, No. 25-11268, 2026 WL 833263, at *2–3 (E.D. Mich. Mar. 26, 2026) (concluding that plaintiff had a viable claim that a consumer reporting agency was required to reinvestigate the inclusion of a dispute notation in her credit report after she claimed to "no longer dispute" the account in question), *with Young v. Equifax Info. Servs., LLC*, No. 21-10095, 2022 WL 957554, at *6 (E.D. Mich. Mar. 29, 2022) ("The Court does not find legal support for [the] conclusion that a request to remove a once-accurate notation of dispute creates an inaccuracy . . . ."). "Given this dearth of guidance and the less-than-pellucid statutory text," Defendant's reading of the FCRA "was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Safeco*, 551 U.S. at 70.

In sum, Plaintiff does not (and cannot) plausibly allege that Defendant willfully failed to comply with any provision of the FCRA

when it declined or otherwise failed to remove a dispute notation from Plaintiff's credit report. Count II of Plaintiff's Amended Complaint is therefore dismissed with prejudice. *See Armstrong*, 2026 WL 833263, at *3 (dismissing claim that Equifax acted willfully under identical circumstances to those alleged here).

## IV. Conclusion

For the reasons set forth above, Plaintiff plausibly alleges that Defendant negligently failed to comply with its obligations under the FCRA by continuing to include a dispute notation in Plaintiff's credit report. Plaintiff does not, however, plausibly allege that Defendant willfully failed to comply with its statutory obligations. Defendant's motion to dismiss (ECF No. 9) is therefore GRANTED as to Count II of the Amended Complaint but DENIED as to Count I of the Amended Complaint.

IT IS SO ORDERED.

Dated: August 5, 2026
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2026.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager